

## OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

Wayne N. Outten
Anne Golden
Adam T. Klein
Laurence S. Moy
Kathleen Peratis
Justin M. Swartz
Jack A. Raisner
Wendi S. Lazar
Carmelyn P. Malalis
Tammy Marzigliano
René S. Roupinian
Ossai Miazad
Cara E. Greene
Rachel M. Bien

Lewis M. Steel
Paul W. Mollica
Molly Brooks
Nantiya Ruan

Deirdre A. Aaron
Sally Abrahamson
*Not admitted in New York*
Reena Arora
Delyanne D. Barros
Katherine Blostein
Cyrus E. Dugger
Jennifer Liu
Carmel Mushin
Melissa Pierre-Louis
Michael Scimone
Amber C. Trzinski
Juno Turner
Elizabeth Wagoner



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/12/13

March 8, 2013

**Via Email**
The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
500 Pearl Street, Room 630
New York, NY 10007

      Re:     *Saleem v. Corporate Transportation Group, Ltd., et al.*, 12 Civ. 8450

Dear Judge Furman:

      We represent Plaintiffs and the putative class and collective in the above-referenced case. We write pursuant to the Court's request that the parties address whether Judge McMahon's decision in *Cariani v. D.L.C. Limousine Service, Inc.*, 363 F. Supp. 2d 637 (S.D.N.Y. 2005) is relevant to this case, and what impact, if any, it should have on this lawsuit's cases management plan.

      *Cariani* does not apply to this case. Corporate Transportation Group ("CTG") is a pick-up and delivery service that operates principally on contracts for recurring transportation with client companies. Judge McMahon found the absence of such contracts in *Cariani* to be a dispositive factor in finding for the defendants. In addition, other facts that Judge McMahon did not consider significant in *Cariani* weigh against applying 29 U.S.C. § 213(b)(17), the taxicab exemption, to CTG. These facts, while not considered in *Cariani*, are relevant under guidance by the Department of Labor ("DOL") as well as decisions by the Fourth, Sixth, and Eleventh Circuits and district courts that have interpreted the taxicab exemption. To date, the only district court that has followed *Cariani* was reversed by the Eleventh Circuit based on factors that are equally applicable to CTG. *See Abel v. S. Shuttle Servs., Inc.*, 301 F. App'x 856 (11th Cir. 2008).

3 Park Avenue, 29th Floor, New York, NY 10016  Tel 212-245-1000  Fax 646-509-2060
6 Landmark Square, Suite 400, Stamford, CT 06901  Tel 203-363-7888  Fax 203-363-0333
203 North LaSalle Street, Suite 2100, Chicago, IL 60601  Tel 312-924-4888  Fax 646-509-2075
og@outtengolden.com   www.outtengolden.com

## Summary of the Facts[1]

The Defendant in *Cariani* was a livery service that principally operated out of the Westchester County Airport. *Cariani* at 641 n.4, 642. It had a stand at the airport, *Id.* at 642, was licensed to do business at the airport, and advertised in the phone book under "airport transportation" and had no contractual arrangements other than its contract with Westchester County to operate at the airport terminal. *Id.*

Unlike the livery service in *Cariani*, CTG's business comes principally through corporate contracts. *See Aristacar & Limousine Ltd.,* Case No. 29-RC-9410, at 3 (Decision and Direction of Election, 7/19/2000). Drivers receive vouchers from passengers and submit those vouchers for reimbursement through corporate accounts. *Id.* at 12-13. Fares are predetermined by CTG and based on travel between or within zones, not a mileage rate measured by a taxi meter. *N.Y.C. 2 Way International,* Case No. 29-RC-63657, at 13 (Decision and Direction of Election, 11/17/2011). CTG is not permitted to operate at taxi stands, whether at airports or elsewhere, and its drivers are prohibited from soliciting or picking up passengers other than those arranged through a dispatch service, and as such do not carry "vacancy" signs or other outward indications that they are available to the public. *See* NYC Taxi & Limousine Commission website, *http://www.nyc.gov/html/tlc/html/industry/current_licensees.shtml*, list of Current Black Car bases (listing all of the CTG Franchise Companies as "Black Car Services" licensed as "for-hire vehicles"); New York City, N.Y., Rules, Tit. 35, § 55-19 (prohibiting for-hire vehicles from soliciting passengers or picking up passengers at taxi stands). CTG's website does not advertise the company as a taxicab service. http://www.corporate-trans.com/index.asp.

## The Taxicab Exemption

The Fair Labor Standards Act ("FLSA") is a broad, remedial statute, and exemptions from its coverage are narrowly construed. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (*citing A.H. Phillips*). The employer bears the burden of showing that its employees fall within an exemption. *Ramos*, 687 F.3d at 558. The exemption for drivers "employed by an employer engaged in the business of operating taxicabs," 29 U.S.C. § 213, has been narrowly construed, and few cases have used it to deny overtime to drivers engaged in businesses like CTG's.

The FLSA does not define the terms "taxicab" or "business of operating taxicabs," but the DOL has defined the term in Chapter 24h of its Field Operations Handbook:

> The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business operates without fixed routes or contracts for recurrent transportation. It serves the miscellaneous and predominantly local

---

[1]  This section is based on the detailed findings of fact made pursuant to the National Labor Relations Act in three separate NLRB representation cases. These findings reflect the NLRB's expertise and were made after adversarial hearings which are generally conducted in accordance with the Federal Rules of Evidence.

transportation needs of the community. It may include such occasional and unscheduled trips to or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals as well as at other places where numerous demands for taxicab transportation may be expected.

Dept. of Labor, Field Operations Handbook, 24h01 (1999 ed.), *available at* *http://www.dol.gov/whd/FOH/*.

The DOL's Field Operations Handbook gives specific examples of non-exempt work relating to the taxicab exemption that are dispositive to this case. 29 U.S.C. § 213(b)(17) defines non-exempt work to include "[p]erforming work, including driving, in connection with other business operations of the employer (i.e., not his taxicab operations), such as operation of an airport limousine service (see FOH24c04), a pick-up and delivery service, or a moving and storage service." Dept. of Labor, Field Operations Handbook, 24h03 (1999 ed.), *available at* *http://www.dol.gov/whd/FOH/*. This additional guidance clarifies not only that airport limousines are not taxicabs, but distinguishes a "pick-up and delivery service" from a driver who is free to pick up any customer and typically uses his own initiative to do so.

The Department of Labor's guidance and the factors considered in the three cases that *Cariani* relied on – *Wirtz v. Cincinnati, Newport & Covington Transportation Co.*, 375 F.2d 513, 515 (6th Cir. 1967); *Airlines Transportation, Inc. v. Tobin*, 198 F.2d 249 (4th Cir. 1952); and *Herman v. Brewah Cab, Inc.*, 992 F. Supp. 1054 (E.D. Wis. 1998) – make clear that 29 U.S.C. § 213(b)(17) does not apply to CTG's drivers. CTG operates a pick-up and delivery service. Its drivers are not "common carriers" who meet the "miscellaneous" transportation needs of the community. Rather, they operate under fixed contracts for recurrent transportation with other businesses and drive routes that all begin or end at the customer's place of business. They do not operate at taxi stands and are prohibited from doing so. New York City, N.Y., Rules, Tit. 35, § 55-19. Additional factors considered in *Wirtz*, *Airlines Transportation*, and *Herman* support this conclusion: CTG's cars do not carry meters or charge by the mile, do not have vacancy signs, and do not advertise as taxicabs. Drivers do not use their own initiative to find passengers, and in fact are prohibited from soliciting passengers; rather, they receive assignments from dispatchers. And again, like the employers in *Wirtz*, *Airlines Transportation*, and *Herman* and unlike the employer in *Cariani*, CTG's drivers operate primarily under contracts with other businesses.

Pursuant to these corporate contracts, CTG operates a "pick-up and delivery service," which is distinct from a taxicab service. *See* Dept. of Labor, Field Operations Handbook, 24h03 (1999 ed.). A pick-up and delivery service employs a central dispatch office to send cars to a customer's location, whereas a taxicab operator picks up customers, at the driver's initiative, typically on the street or at an identifiable taxi stand. *See Wirtz*, 375 F.2d at 515, *Airlines Transp.*, 198 F.2d at 252, *Herman*, 992 F. Supp. at 1059.

Finally, several cases decided after *Cariani* have concluded that the taxicab exemption does not apply to drivers like those employed by CTG. In *Abel v. S. Shuttle Services, Inc.*, No. 07 Civ. 80584, 2008 WL 2385490 (S.D. Fla. June 9, 2008), the district court, citing *Cariani*, held that the taxicab exemption applied. *Abel* at *3. The Eleventh Circuit reversed, pointing out that the drivers always began and ended their routes at the airport, did not have taxi meters, and did

not advertise as taxicabs. *Abel v. S. Shuttle Servs., Inc.*, 301 F. App'x 856, 860 (11th Cir. 2008). *See also, Rossi v. Associated Limousine Services, Inc.*, 438 F. Supp. 2d 1354 (S.D. Fla. 2006), and *Powell v. Carey International, Inc.*, 490 F. Supp. 2d 1202 (S.D. Fla. 2006).

## Case Management Plan

Defendants' case management proposal rests on two contradictory premises: that all fourteen opt-in plaintiffs may be subject to a common defense such as an FLSA exemption (Defendants have not bothered to articulate any difference among the fourteen), but that class certification is nevertheless inappropriate and should be delayed. Defendants have argued that allowing full-blown discovery on the fourteen opt-in plaintiffs and motions for summary judgment on the basis of a common defense will lead to a "ripple effect" that will dissuade other drivers from bringing suit. In plainer language, Defendants seek a chilling effect: they wish to discourage litigation without running the risk that they could be subject to classwide liability.

This approach is a misuse of legal process and is inconsistent with how courts typically manage similar cases. Courts routinely find that overtime exemption cases present "about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007). That is because an employer's blanket policy that its employees are not eligible for overtime strongly suggests that there are no material differences that the employer considers important enough to predominate over the relevant common issues. *See Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) ("That Duane Reade itself makes such a blanket determination is evidence that differences in the position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements."). The same is true of an employer's determination that employees are independent contractors. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (certifying class of alleged independent contractors and finding that common question of whether independent contactor status was proper predominated over individualized inquiries). CTG classifies *all* of its drivers as independent contractors. Plaintiffs' challenge to that blanket determination is  well suited for class treatment and Plaintiffs should have an early opportunity to make that showing.

Plaintiffs respectfully request that the Court adopt Plaintiffs' case management plan, which provides an early opportunity to distribute collective action notice and certify a class simultaneously with merits discovery.

Respectfully submitted,

Michael J. Scimone

C:      Douglas Weiner, Esq. (via Email)
        Evan J. Spelfogel, Esq. (via Email)

Stephen H. Kahn, Esq.
Adam T. Klein, Esq.
Reena Arora, Esq.


Upon due reflection, the Court agrees that the Plaintiffs'
proposed case management plan is the better alternative given
all of the circumstances. The Court will endorse that Plan,
albeit with some dates modified, separately.

SO ORDERED.

March 12, 2013