**OUTTEN & GOLDEN LLP**
Adam T. Klein
Michael J. Scimone
Reena Arora
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**KAHN OPTON, LLP**
Stephen H. Kahn
One Parker Plaza
Fort Lee, New Jersey 07024
Telephone: (201) 947-9200

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAZHAR SALEEM and JAGJIT SINGH, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CORPORATE TRANSPORTATION GROUP, LTD., CORPORATE TRANSPORTATION GROUP INTERNATIONAL, CORPORATE TRANSPORTATION GROUP WORLDWIDE, INC., NYC 2 WAY INTERNATIONAL, LTD., ALLSTATE PRIVATE CAR & LIMOUSINE, INC., ARISTACAR & LIMOUSINE, LTD., TWR CAR AND LIMO, LTD., EXCELSIOR CAR AND LIMO, INC., HYBRID LIMO EXPRESS, INC., EDUARD SLININ, and GALINA SLININ,<br><br>　　　　　　　　　　Defendants. | No. 12 Civ. 8450 (JMF) |

### PLAINTIFFS' MEMORANDUM OF LAW IN
### SUPPORT OF MOTION TO APPROVE THE FORM AND
### DISTRIBUTION OF COURT-AUTHORIZED NOTICE
### PURSUANT TO SECTION 216(b) OF THE FLSA

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

PROCEDURAL HISTORY ....................................................................................................... 2

ARGUMENT ............................................................................................................................. 2

    I.      Drivers' Tax Status Is Not at Issue in this Litigation, and Defendants' Proposed Language Distracts from the Purpose of this Notice. ............................. 2

    II.     Social Security Numbers ........................................................................................ 5

CONCLUSION .......................................................................................................................... 8

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Braunstein v. E. Photo. Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1975)......................................................................................2, 5

*Cranney v. Carriage Servs., Inc.*,
   No. 07 Civ. 1587, 2008 WL 608639 (D. Nev. Feb. 29, 2008) ....................................6

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)..........................................................................6

*Heitmann v. City of Chicago*,
   No. 04 Civ. 3304, 2004 WL 1718420 (N.D. Ill. July 30, 2004) ..................................3

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989).....................................................................................................8

*Jacob v. Duane Reade, Inc.*,
   No. 11 Civ. 0160, 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012)....................................3

*Lewis v. ASAP Land Exp., Inc.*,
   No. 07 Civ. 2226, 2008 WL 2152049 (D. Kan. May 21, 2008) ...............................4, 5

*Pippins v. KPMG LLP*,
   No. 11 Civ. 0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)...............................3, 6, 7

*Shajan v. Barolo, Ltd.*,
   No. 10 Civ. 1385, 2010 WL 2218095 (S.D.N.Y. June 2, 2010)...................................7

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011)..........................................................................7

**Statutes**

29 U.S.C. § 216(b) ..............................................................................................................2

N.Y. Gen. Bus. Law 399-ddd .........................................................................................6, 7

**PRELIMINARY STATEMENT**

Plaintiffs in this case are drivers of "black car" livery vehicles who work for the Defendant companies. Plaintiffs challenge Defendants' decision to classify them as "independent contractors," as opposed to employees entitled to overtime and other protections of federal and state labor laws. Defendants constitute a single enterprise doing business as Corporate Transportation Group ("CTG"). Plaintiffs and class members seek unpaid overtime, reimbursement of unlawful deductions from their wages, and other statutory damages, as well as injunctive relief ordering Defendants to alter their compensation practices.

By this motion, Plaintiffs seek approval of their proposed form of court-authorized notice and of their proposed procedure for distributing that notice to potential co-plaintiffs. Defendants do not oppose sending notice, but request one change to the form and one change to the procedure proposed by Plaintiffs: (1) Defendants ask that the notice warn drivers that tax consequences might stem from their participation in this lawsuit; (2) Defendants oppose production of drivers' Social Security numbers, which Plaintiffs request for the sole purpose of contacting potential co-plaintiffs who cannot be located by other means.

This motion asks the Court to approve Plaintiffs' proposed notice,[1] which omits Defendants' suggested tax warnings, and to approve Plaintiffs' proposed notice procedure, by which Defendants would produce Social Security numbers to help in locating potential claimants who cannot be otherwise located. Both parties agree that any notice the Court

---

[1] Plaintiffs' proposed notice is attached as Exhibit A to the Declaration of Michael J. Scimone in Support of Plaintiffs' Motion to Approve the Form and Distribution of Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Scimone Decl."). A copy of the notice that includes Defendants' proposed language is attached to the Scimone Declaration as Exhibit B. Unless otherwise specified, all exhibits are attached to the Scimone Declaration.

approves should be sent to similarly situated drivers to invite them to protect their claims through this litigation.

## PROCEDURAL HISTORY

Named Plaintiffs Mazhar Saleem and Jagjit Singh filed this class and collective action on November 19, 2012, under the FLSA and New York Labor Law ("NYLL"), on behalf of themselves and other drivers who worked for CTG.[2]  On March 12, 2013, the Court approved the current case management plan, which ordered the parties to confer on or before April 24, 2013 about whether to stipulate to sending notice.[3]  The parties conferred several weeks in advance of this date, and exchanged several drafts of a proposed notice.[4]  Plaintiffs incorporated a number of the suggestions made by Defendants but rejected others.[5]  The parties were able to narrow the points of dispute to the two issues currently before the Court.[6]

## ARGUMENT

I. **Drivers' Tax Status Is Not at Issue in this Litigation, and Defendants' Proposed Language Distracts from the Purpose of this Notice.**

The FLSA authorizes private parties to bring a collective action "[o]n behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts may authorize notice to potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979).

A 216(b) notice is a communication from one or more plaintiffs to other prospective co-litigants.  As such, Plaintiffs' preferred form of notice should be adopted unless the notice

---

[2] Scimone Decl. ¶ 2.
[3] Scimone Decl. ¶ 3; ECF No. 42.
[4] Scimone Decl. ¶ 4.
[5] Scimone Decl. ¶ 5.
[6] Scimone Decl. ¶ 6.

2

is inaccurate or misleading. *See Heitmann v. City of Chicago*, No. 04 Civ. 3304, 2004 WL 1718420, *3 (N.D. Ill. July 30, 2004) ("[T]he Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter Plaintiffs' proposed notice unless such alteration is necessary."). The notice that Plaintiffs propose is the type of neutral notice routinely approved by courts in this Circuit. *See, e.g., Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2012 WL 260230 (S.D.N.Y. Jan. 27, 2012); *Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *13 (S.D.N.Y. Jan. 3, 2012). It contains no inaccurate or misleading language, and thus is entitled to deference. Defendants' proposed language about tax consequences is speculative, and would serve only to confuse potential opt-in plaintiffs and discourage them from participating in this case.

The claims in this lawsuit concern Plaintiffs' and similarly situated drivers' classification for overtime purposes.[7] The injunctive and declaratory relief Plaintiffs seek does not include any determination of Plaintiffs' tax status, and Plaintiffs have not sought any such determination from the IRS or state tax authorities. Therefore, Plaintiffs' proposed notice correctly states:

> "The Plaintiffs in this case are not seeking any determination of drivers' tax status. The lawyers involved in this lawsuit do not give tax advice. Your tax advisor is your best source of information concerning your own individual circumstances."[8]

Defendants propose to revise this passage as follows:

> The Plaintiffs in this case are not seeking any determination of drivers' tax status. <u>However, the outcome of the case may affect your tax status</u>. The lawyers involved in this lawsuit do not give tax advice. Your tax advisor is your best source of information concerning your own individual circumstances.[9]

---

[7]  Ex. C (Complaint), ¶¶ 1-4.
[8]  Ex. A (Plaintiffs' Proposed Notice), ¶ 2.
[9]  Ex. B (Defendants' Proposed Notice), ¶ 2 (emphasis added to illustrate contrast).

3

Defendants' language would cause confusion, and would discourage drivers from participating in this case. It begs a question that it does not answer, as it fails to specify what tax consequences might occur; indeed, it cannot do so to any useful degree, as there are an array of possible outcomes in this case that might impact drivers' tax obligations in various ways – just as there would be in any lawsuit involving a claim for monetary relief.

If Plaintiffs prevail in this lawsuit, there is no certainty that any change would occur in drivers' tax classification. While it is likely that Defendants would begin reporting drivers' income as wages subject to payroll taxes, rather than as income from self-employment, other relief Plaintiffs seek would significantly alter how drivers are paid. For example, Plaintiffs seek to end Defendants' practice of shifting the costs of CTG's business, such as gas expenses and vehicle costs, to drivers.[10] If Plaintiffs prevail on these claims, CTG would no longer require drivers to pay these costs from their own income. While it is probable that many drivers currently report these costs as business expenses for tax purposes, they would no longer have to pay them at all if Plaintiffs are granted the injunctive relief they seek. Defendants' proposed language does not explain this.

Other outcomes in this case are certainly possible, and an array of possible tax outcomes could follow. But inviting drivers to consider unspecified tax consequences of outcomes that remains undetermined is at odds with the purpose of sending notice, which is simply to inform drivers of the claims in the case and their right to participate.

The net effect of Defendants' proposed language would be to cause undue speculation, confuse drivers, and discourage them from joining this case. For these reasons, the court in *Lewis v. ASAP Land Exp., Inc.*, No. 07 Civ. 2226, 2008 WL 2152049, at *2 (D.

---

[10]   Ex. C (Complaint), ¶¶ 103-110.

Kan. May 21, 2008) rejected such language in a 216(b) notice sent to purported independent contractors to inform them about a case that challenged their employee classification. The court held that such language would "dissuade those with meritorious claims from joining the action" and rejected it. Moreover, the court held that the suggested tax language would "suggest that recovery is likely," *Lewis*, 2008 WL 2152049, at *2, which would be inconsistent with a court-authorized notice that accurately informs drivers of the claims in the lawsuit and explains that "[t]he Court has not decided whether CTG or the Plaintiffs are correct."[11]

Ultimately, Defendants' suggested language serves no purpose and is more confusing than informative. It would discourage drivers with potentially meritorious claims from joining the case, which would be inconsistent with the FLSA's remedial purpose. *See Braunstein*, 600 F.2d at 336.

## II.     Social Security Numbers

Plaintiffs ask that the Court approve their proposed procedure for distributing notice to potential opt-in plaintiffs, as described below. Defendants object only to the proposal that drivers' Social Security numbers be produced in the event that notices sent to them are returned as undeliverable.

Plaintiffs propose the following procedure to send 216(b) notice:

1.      Within 10 days of the Court's order approving notice, Defendants provide to Plaintiffs a list (in Microsoft Office Excel format) containing the name, last known home address, telephone number, email (if available), affiliated corporate entity, and dates of

---

[11]    Ex. A (Plaintiffs' Proposed Notice), ¶ 6.

affiliation for all former and current drivers who worked for Defendants at any time between November 19, 2009 and the present;

2. Plaintiffs (or a third-party claims administrator) shall mail the form of notice approved by the Court via First-Class Mail to drivers who appear on the list;

3. Plaintiffs will also email the notice to any individual for whom Defendants are able to provide an email address. *See Pippins*, 2012 WL 19379, at *14 (ordering notice sent by email and finding that "given the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate"); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (ordering production of email addresses); *Cranney v. Carriage Servs., Inc.*, No. 07 Civ. 1587, 2008 WL 608639, at *5 (D. Nev. Feb. 29, 2008) (same).

4. Drivers shall be allowed to opt in to the case within 60 days of the date the notice is sent, or at a later date upon mutual consent of the parties;

5. If a notice is returned as undeliverable, Defendants will provide the Social Security number for that individual to Plaintiffs, who will use that information for the sole purpose of performing a skip-trace to identify a new mailing address, but will otherwise designate the information as Confidential pursuant to the parties' outstanding Stipulation Governing the Production and Exchange of Confidential Material;[12]

6. Plaintiffs shall be allowed to send a reminder mailing halfway through the opt-in period.

Defendants oppose item 5, production of Social Security numbers, citing privacy concerns and the newly-enacted N.Y. Gen. Bus. Law 399-ddd, which restricts employers

---

[12] Ex. D (Confidentiality Agreement).

from sharing Social Security numbers of employees.

Plaintiffs' counsel is mindful of the privacy concerns of their clients, and will maintain the confidentiality of any Social Security number produced, and agree they should be produced only as needed.  This procedure has been approved many times in FLSA cases for the purpose of sending notice to similarly situated individuals.  *See Pippins*, 2012 WL 19379, at *14 (ordering production of Social Security numbers only where notices were returned as undeliverable upon execution of a confidentiality agreement); *Shajan v. Barolo, Ltd.*, No. 10 Civ. 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) (same); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) (same, and citing concern that unnecessary delay in providing notice would erode the claims of opt-ins, as the statute of limitations continues to run).

New York General Business Law's restriction that bars employers from disclosing social security numbers is not an obstacle under these circumstances.  N.Y. Gen. Bus. Law 399-ddd contains the following exception, which would apply here:

> This section does not prevent the collection, use, or release of a social security account number as required by state or federal law, the use of a social security account number for internal verification, fraud investigation or administrative purposes or for any business function specifically authorized by 15 U.S.C. 6802.

N.Y. Gen. Bus. Law 399-ddd(3).  Here, the social security numbers would be for verification purposes, specifically for the administrative purpose of verifying the mailing addresses of current or former employees for purposes of notifying them that they may have a claim for back wages.  And if the Court orders Plaintiffs' proposed procedure for notice distribution, disclosure of drivers' social security numbers will be required by law.

7

## CONCLUSION

Plaintiffs respectfully request that the Court approve Plaintiffs' proposed notice and order the procedure outlined above for sending notice to drivers similarly situated to Plaintiffs. Plaintiffs' proposed notice is "timely, accurate, and informative," and therefore should be approved.  *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

Dated: New York, New York
April 30, 2013

                                      Respectfully submitted,

                                      /s/ Adam T. Klein
                                      Adam T. Klein

                                      **OUTTEN & GOLDEN LLP**
                                      Adam T. Klein
                                      Michael J. Scimone
                                      Reena Arora
                                      3 Park Avenue, 29th Floor
                                      New York, New York 10016
                                      Telephone:  (212) 245-1000

                                      **KAHN OPTON, LLP**
                                      Stephen H. Kahn
                                      One Parker Plaza
                                      Fort Lee, New Jersey 07024
                                      Telephone: (201) 947-9200

                                      *Attorneys for Plaintiffs and*
                                      *the Putative Class and Collective*