# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.878.8600
WWW.EBGLAW.COM

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/08/2013
```

MARGARET THERING
TEL: 212.351.3732
FAX: 212.878.8637
MTHERING@EBGLAW.COM

July 3, 2013

**VIA EMAIL**
The Honorable Jesse M. Furman
United States District Judge, Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Saleem and Singh, et al. v. Corporate Transportation Group, Ltd., et al.*, No. 12 Civ. 8450

Dear Judge Furman:

      We represent defendants (collectively "CTG"). We write in response to plaintiffs' June 28, 2013 letter seeking a motion to quash third party subpoenas and for a protective order. Plaintiffs' request for a pre-motion conference is premature. Further, there is no basis to quash subpoenas that seek material, relevant information going to the heart of plaintiffs' claims.

      Plaintiffs' letter does not accord with Your Honor's rules of practice requiring the parties to first meet and confer regarding a discovery dispute. In his June 28, 2013 letter, Mr. Scimone writes: "[t]he parties have met and conferred, but Defendants have refused to narrow or rescind the subpoenas." This is a misstatement. Mr. Scimone and I spoke late on June 28, 2013. The purpose of the call was to discuss the status of discovery after mediation was adjourned on June 26, 2013. Even though we sent the first notice of subpoenas to plaintiffs on June 12, 2013, this call was the first time that Mr. Scimone raised any objections to the subpoenas.

      During our June 28 call, Mr. Scimone and I briefly discussed the subpoena issue. Mr. Scimone told me he would move to quash the subpoenas if we did not withdraw them. I told him that we were not inclined to withdraw the subpoenas, as I did not believe the subpoenas were overbroad, but that I would give the issue some thought and get back to him after the weekend. Mr. Scimone did not allow me time to consider his request. Rather, he emailed Your Honor a letter about this issue just minutes after our teleconference ended. Moreover, after reviewing Mr. Scimone's letter on July 1, 2013, I emailed Mr. Scimone and told him we were willing to write to all recipients of the subpoenas to instruct them not to provide us with medical information. Mr. Scimone has not responded.

ATLANTA • BOSTON • CHICAGO • HOUSTON • INDIANAPOLIS • LOS ANGELES
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, DC

FIRM:23462955v1

July 3, 2013
Page 2

The subpoenas defendants served seek information directly relevant to the main issue in this case — whether plaintiffs were misclassified as independent contractors. There is no "fishing expedition." Rule 26 of the Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and the scope of discovery allowed under a subpoena pursuant to Rule 45 is equally as broad as the scope allowed under Rule 26. *See During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 U.S. Dist. Lexis 53684 (S.D.N.Y. Aug. 1, 2006).

Determining whether plaintiffs provided driving services for competitors of CTG, how much revenue they earned from the provision of such services, when, and the amount of time they provided such services are factors under the economic realities test. *Canada v. Hotel Dev.-Tex., Ltd.*, No. 3-07-cv-1443-D, 2008 U.S. Dist. LEXIS 58110, at *5 (N.D. Tex. July 30, 2008) ("Whether plaintiff earned income from outside sources during the time she worked for defendants and, if so, the amount of such earnings, will certainly assist the trier of fact in determining whether plaintiff was, as a matter of economic reality, in business for herself [and therefore an independent contractor]."). Additionally, information about disciplinary actions taken against plaintiffs by competitor black car companies is relevant. Plaintiffs argue that one of the reasons they were improperly classified as independent contractors is because CTG took disciplinary actions against them. This is not true. CTG does not discipline drivers. Information about whether competitors discipline drivers is relevant to the extent that competing companies discipline drivers, and the drivers concede that those other companies are not their employers. The requested information is also relevant to show how the industry, as a whole, treats drivers, and that it has always been understood by the drivers that they were independent contractors with other entities, just as they understood that to be the case with CTG.

The cases plaintiffs cite in support of their position are unavailing. Neither *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D 251 (S.D. Ohio 2011) nor *Barrington v. Mortgage IT, Inc.*, No. 07-61304-civ, 2007 WL 4370647 (S.D. Fla. Dec. 10, 2007) were independent contractor misclassification cases, and *Barrington* contravenes plaintiffs' argument that defendants should not be allowed to obtain personal information about plaintiffs through third party subpoenas due to concerns about confidentiality and embarssment. *Id.*, at *1, n.3 ("Plaintiffs also object on the ground that the subpoenas seek their confidential personal information. However, 'it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order.'" (citations omitted).

Plaintiffs also argue that the information sought through the subpoenas is better obtained from plaintiffs themselves. Defendants have sought to obtain this information from plaintiffs directly, but plaintiffs have not responded to defendants' discovery attempts. While some of this information is contained in plaintiffs' tax returns, neither named nor opt in plaintiffs to date have produced their full tax returns as ordered by the Court. Additionally, plaintiffs have refused to produce requested phone records relating to plaintiffs providing driving services for companies or individuals other than defendants, or information about time plaintiffs have spent not engaged in driving services for defendants. Accordingly, a third-party subpoena is an appropriate method for defendants to obtain this information.

July 3, 2013
Page 3

Moreover, plaintiffs' suggestion that defendants simply ask for this information through depositions is ludicrous. Written documentation is the best evidence. Further, this information is necessary in order for defendants to determine whom to depose; and to help defendants formulate questions for depositions. In addition, defendants have agreed at this stage to depose only 16 plaintiffs, so it will be impossible to obtain this information for all plaintiffs through depositions of a few.

Plaintiffs also argue the subpoenas should be "quashed because they serve only to embarrass Plaintiffs and interfere with their ability to work." While the subpoenas were not served for any such purpose, we note that, as stated in a case cited by plaintiffs, discovery should not be denied because it might subject a plaintiff to "annoyance, embarrassment, oppression or undue burden." *Richards v. Convergys Corp.*, Nos. 2:05-cv-00790-DAK, 2:05-cv-00812-DAK, 2007 WL 474012, at *2 (D. Utah Feb. 7, 2007). Other cases cited by plaintiffs in support of this "embarrassment" argument are not on point. *Vuona v. Merrill Lynch*, No. 10 Civ. 6529, 2011 WL 5553709 (S.D.N.Y. Nov. 15, 2011) and *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, 2003 WL 115221 (S.D.N.Y. Jan. 10, 2003) deal with whether plaintiffs were the victims of gender discrimination, not whether they were properly classified as independent contractors. Similarly, *Bickley v. Schneider Nat'l Inc.*, No. 08 Civ. 5806, 2011 WL 1344195 (N.D. Cal. Apr. 8, 2011) is distinguishable because it does not deal with independent contractor status, and the California Constitution guarantees citizens of California "an inalienable right to privacy," something New York citizens are not guaranteed. Moreover, "[a] litigant . . . must reasonably anticipate that his personal matters will be disclosed [in litigation]," *During*, 2006 U.S. Dist. Lexis 53684, at *16 (citation omitted), and plaintiffs should not be heard to complain that CTG seeks material, relevant discovery that squarely addresses the very claims plaintiffs seek to advance.

We also call to the Court's attention plaintiffs' counsel having sent a letter to at least one third party subpoena recipient, M.J. Flight Line Management of New York City (without copying defendants' counsel), instructing the recipient not to respond to the subpoena "because discovery has been stayed until July 18, 2013." (*See* Exhibit A.) This is incorrect. Discovery was stayed pending mediation, but on June 26, 2013, the parties agreed to reconvene discovery.

Finally, Mr. Scimone asks Your Honor to order Defendants to produce immediately to plaintiffs any documents received in response to the subpoenas. As I explained to Mr. Scimone on June 28, 2013, defendants have not yet received any such documents, but will produce these documents when they are received.

Very truly yours,

Margaret C. Thering

FIRM:23462955v1