```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
MAZHAR SALEEM, et al.,                                            :
                                                                  :
                              Plaintiffs,                         :        12 Civ. 8450 (JMF)
                                                                  :
               -v-                                                :        OPINION AND ORDER
                                                                  :
CORPORATE TRANSPORTATION GROUP,                                   :
LTD., et al.,                                                     :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/15/2013

JESSE M. FURMAN, United States District Judge:

This is an action by current and former drivers who have worked for Corporate Transportation Group, Limited and its affiliated franchisor companies (collectively, "CTG"). Plaintiffs claim that CTG improperly classified them as independent contractors, thereby depriving them of, *inter alia*, overtime compensation due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq*. Plaintiffs move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for class certification of their NYLL claims. For the reasons that follow, the motion is DENIED. Separately, Defendants request that certain documents, previously filed under seal, remain filed under seal. That application is GRANTED.

## BACKGROUND

CTG provides "black car" transportation services to corporate and individual clients. (Compl. ¶ 1 (Docket No. 1); Scimone Supp. Decl. Ex. B). Three of the Defendants in this action — Corporate Transportation Group, Limited; Corporate Transportation Group International; and

Corporate Transportation Group Worldwide, Inc. — serve a data processing function in the business; they receive vouchers and credit card slips from CTG drivers, process these forms, and remit payment to the drivers. (Thering Decl. (Docket No. 366) Ex. 4 ("Thering Civello Dep.") at 37:4-39:1). Six of the Defendants — NYC 2 Way International; Allstate Private Car & Limousine, Inc.; Aristacar & Limousine, Ltd.; TWR Car and Limo, Ltd.; Excelsior Car and Limo, Inc.; and Hybrid Limo Express, Inc. — are CTG franchisors, selling and leasing franchises to individual drivers or corporations who wish to use CTG's data processing services. (Thering Civello Dep. at 39:16-42:20; Defs.' Mem. (Docket No. 368) 3). The franchisors also solicit clients. (Thering Civello Dep. at 38:13-16, 39:16-22). Plaintiffs sue two individual officers of CTG as well. (Compl. ¶ 27).

Plaintiffs, drivers for CTG franchisors in the New York City area, have been designated by CTG as independent contractors. (Scimone Supp. Decl. (Docket No. 166) Ex. C ("Scimone Civello Dep.") at 287:19-25; Scimone Supp. Decl. Ex. B). This designation exempts them from the protections of the NYLL, including the requirement that employers pay employees a rate of one and one-half times their regular pay rate for hours worked in excess of forty in a workweek. *See Hart v. Rick's Cabaret Int'l, Inc.*, — F. Supp. 2d —, No. 09 Civ. 3043 (PAE), 2013 WL 4822199, at *4 (S.D.N.Y. 2013); 12 N.Y.C.R.R. § 146-1.4. The independent-contractor designation also exempts Plaintiffs from the similar protections of the FLSA. *See Hart*, 2013 WL 4822199 at *4; 29 U.S.C. § 207(a)(1). The instant motion, however, concerns only Plaintiffs' NYLL claims, as FLSA claims may not be brought as a class action pursuant to Rule 23. *See, e.g.*, *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 196 (S.D.N.Y. 2006) (distinguishing the rules governing the plaintiffs' NYLL Rule 23 certification motion from the rules governing their FLSA collective action certification motion).

The drivers enter agreements with their franchisors ("Franchisor Agreements"), which govern the terms of these relationships.  (Scimone Supp. Decl. (Docket No. 166) Ex. C ("Scimone Civello Dep.") at 254:12-19).  The parties have produced only two of the Franchisor Agreements: those for Defendants NYC 2 Way and Allstate.  (*See* Scimone Supp. Decl. Ex. D ("NYC 2 Way Franchisor Agreement"); Scimone Supp. Decl. Ex. E ("Allstate Franchisor Agreement")).  They are similar in most — but not all — respects.  For example, they provide that CTG will offer work to drivers through some manner of dispatch or referral system (NYC 2 Way Franchisor Agreement ¶ 30; Allstate Franchisor Agreement ¶ 32), prohibit drivers from personally soliciting business from CTG clients (NYC 2 Way Franchisor Agreement ¶ 42; Allstate Franchisor Agreement ¶ 41), set forth the methodology by which drivers' compensation is calculated (NYC 2 Way Franchisor Agreement ¶¶ 3, 37; Allstate Franchisor Agreement ¶¶ 3, 37), and incorporate the provisions of the Franchisor's "Rulebook" (NYC 2 Way Franchisor Agreement ¶ 23; Allstate Franchisor Agreement ¶ 25).  The Rulebooks — which, again, have been provided for only two franchisors — set forth general guidelines as to how drivers are to conduct themselves, including a dress code, standards for vehicle maintenance, and a list of specifically enumerated violations with corresponding suspensions and fines.  (*See* Scimone Supp. Decl. Ex. M ("NYC 2 Way Rulebook"); Scimone Supp. Decl. Ex. N ("TWR Rulebook")).[1]  The Rulebooks are written and enforced by driver-run committees.  (Scimone Civello Dep. at 93:14-25, 94:16-17; Thering Civello Dep. at 80:7-10).

---

[1] Plaintiffs state in their brief that "[t]he Rulebooks for each company are substantially similar because all were copied from a common source."  (Pls.' Mem. 8).  The Court is unable to credit this assertion, however, because Plaintiffs cite as support a page from the Civello Deposition that has not been attached to the Scimone Supplemental Declaration.  In fact, very few of the pages from the Civello Deposition cited by Plaintiffs purportedly reflecting Mr. Civello's discussion of the Rulebooks have been provided to the Court.  (*Compare* Pls.' Mem. 8 nn.61-68 *with* Scimone Civello Dep.).

Regardless of which franchisor a driver works for, he or she receives the majority of CTG work through an electronic dispatch system using a handheld device. (Scimone Civello Dep. at 163:8-14). Using this system, drivers can signal that they are available to pick up customers by "booking in" to a geographical zone with the device. They are then placed on a queue with other drivers located in that same zone. (*Id.* at 178:12-21). Once a driver reaches the top position in the queue, he or she may receive a job offer in that zone, which must be accepted within forty-five seconds; if the driver fails to do so, he or she is temporarily "book[ed] off" the zone. (*Id.* at 184:4-22; 186:20-23). Drivers can also receive CTG jobs that have bypassed the queue if a customer specifically requests to be picked up by that driver. (*Id.* at 204:19-205:10).

Not all Plaintiffs, however, drive or drove exclusively for CTG. Some of the drivers have or had their own private clients (at least some of whom were also CTG customers, in apparent violation of the Franchise Agreements); such clients pay the drivers directly, bypassing CTG's voucher system. (*See, e.g.*, Thering Decl. Ex. 2 ("Ali Dep.") at 108:8-14, 109:11-110:10; Ex. 5 ("Choudhary Dep.") at 41:14-19; Ex. 14 ("J. Solorzano Dep.") at 36:25-37:2, 38:1-8). Further, some drivers work or worked for competitor black car companies at the same time as working for CTG (*see, e.g.*, Ali Dep. at 36:5-22; Thering Decl. Ex. 10 ("Saleem Dep.") at 20:14-20; Thering Decl. Ex. 11 ("Siddiqui Dep.") at 93:21-94:18), a practice that Plaintiffs claim is prohibited by New York City Taxi & Limousine regulations. (Pls. Reply Mem. (Docket No. 382) 5; Litrownik Decl. (Docket No. 383) Ex. B ("Kumar Dep.") at 34:15-36:5).

In November 2012, two Plaintiffs filed a class action complaint, asserting that CTG had violated the FLSA and NYLL by, *inter alia*, failing to pay them overtime compensation. (Compl. ¶¶ 3-6). In June 2013, the Court conditionally certified their FLSA claims as a "collective action" under Section 216(b), finding that Plaintiffs had "demonstrated the existence

of a definable class of potential plaintiffs who are similarly situated." (Docket No. 67 (internal quotation marks omitted)). Since that time, 273 drivers have filed forms consenting to join the lawsuit with respect to the FLSA claims. (Scimone Decl. Opp'n Mot. to Strike Untimely Plaintiffs (Docket No. 424) ¶ 3). Plaintiffs now move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for class certification of their NYLL claims. They define the class as "all drivers at any CTG franchise company in New York State, on or after the date that is six years before the filing of the Class Action Complaint." (Compl. ¶ 49). Defendants object to certification on the grounds that Plaintiffs have not satisfied Rule 23's requirements of commonality, predominance, and superiority. (Defs.' Mem. 13).

**PLAINTIFFS' MOTION FOR CLASS CERTIFICAITON**

**A.  Applicable Legal Principles**

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation marks omitted). To bring a claim on behalf of a class, the party seeking certification must "affirmatively demonstrate his compliance with Rule 23." *Id.* (internal quotation marks omitted). That means, first, satisfying the "the four threshold requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy of representation." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). If those threshold requirements are met, the moving party must also "demonstrate 'through evidentiary proof' that the class satisfies at least one of the three provisions for certification found in Rule 23(b)." *Id.* Here, Plaintiffs propose a Rule 23(b)(3) class (Pls.' Mem. 16), which means that they "must establish: (1) predominance — 'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority — 'that

5

a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 117 (quoting Fed. R. Civ. P. 23(b)(3)).

In evaluating a motion for class certification, a district court may consider merits questions, but only "to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013); *accord Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 464-65 (2d Cir. 2013). Significantly, Rule 23 "does not set forth a mere pleading standard." *Comcast Corp.*, 133 S. Ct. at 1432 (internal quotation marks omitted). Instead, the party seeking certification must demonstrate by a preponderance of the evidence that all the requirements of the Rule have been met. *See, e.g.*, *Levitt*, 710 F.3d at 465. Further, in evaluating whether the moving party has done so, the Court must engage in a "rigorous analysis," in which it is permitted to "probe behind the pleadings before coming to rest on the certification question." *Comcast Corp.*, 133 S. Ct. at 1432 (internal quotation marks omitted). Notably, this "rigor[]" stands in sharp contrast to the scrutiny a court must give a motion to preliminarily certify a FLSA claim as a collective action. There, the moving party must make only a "modest factual showing" that there exist "similarly situated plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) (internal quotation marks omitted). Thus, successful certification of a collective action for purposes of an FLSA claim does not imply that the Rule 23 requirements have been met for purposes of a NYLL claim. *See, e.g.*, *Guan Ming Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 173-78 (S.D.N.Y. 2011) (denying class certification of NYLL claims while certifying a FLSA collective action); *Shayler v. Midtown Investigations, Ltd.*, No. 12 Civ. 4685 (KBF), 2013 WL 772818, at *1 (S.D.N.Y. Feb. 27, 2013) (denying class certification of

6

NYLL claims after the parties had stipulated to a FLSA collective action); *see also Lynch v. U.S. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) ("[T]he 'similarly situated' standard for certifying a . . . collective action is considerably more liberal than class certification under Rule 23." (internal quotation marks omitted)).

**B. Discussion**

There is no dispute here that the proposed class would meet the numerosity requirement and that Plaintiffs and their counsel would adequately represent the class. (Defs.' Mem. 13). Instead, the parties disagree over whether Plaintiffs have met their burden on the commonality, predominance, and superiority requirements. Defendants argue, with considerable force, that any determination as to whether CTG properly classified its drivers as independent contractors requires an inquiry into the work performed by each individual driver, defeating both the commonality and predominance requirements. In a related vein, Defendants argue that a class action is not a superior means of resolving the dispute because "resolving issues of damages and liability for one putative plaintiff will not resolve those issues for another." (Defs.' Mem. 23). Plaintiffs, by contrast, contend that common questions do, in fact, predominate, because all drivers "have the same duties subject to the same policies, and CTG classifies them all as independent contractors," (Pls.' Mem. 20), and that a class action is thus the superior mechanism for adjudicating the controversy. (*Id.* 23-24).

The Court turns first to the commonality requirement, which provides that there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Members of the class must have claims that "depend upon a common contention" that is "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

131 S. Ct. 2541, 2551 (2011).  In other words, what matters for purposes of commonality is not merely that Plaintiffs raise "common questions — even in droves — but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original and internal quotation marks omitted).

Here, whether the commonality requirement is met turns on whether the "most important question" — namely, whether CTG correctly classified the franchisors' drivers as independent contractors — can be answered through common evidence.  (Pls.' Mem. 17).  Under the NYLL, "the critical inquiry in determining whether an employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results."  *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).  Factors relevant to this inquiry include "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  *Id.*; *see Edwards v. Publishers Circulation Fulfillment, Inc.*, 268 F.R.D. 181, 184 (S.D.N.Y. 2010).[2]

In arguing that this inquiry can be conducted on a class-wide basis, Plaintiffs rely heavily on the Franchise Agreements and incorporated Rulebooks.  In particular, Plaintiffs assert that all drivers signed "substantially identical franchise agreements that governed the terms of their work," "were subject to the same policies for receiving and accepting work," and "were subject

---

[2]   Notably, this is a different standard than that used for purposes of the FLSA.  *See, e.g.*, *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-43 (2d Cir. 2008) (explaining the "economic realities test" that courts apply in the FLSA context).  In addition, the Second Circuit at one point construed New York law to distinguish between employees and independent contractors based on the putative employer's "right of control over the agent." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1033 (2d Cir. 1997) (internal quotation marks omitted).  As the Court noted in *Edwards*, however, the New York Court of Appeals "conspicuously did not apply [this] 'right to control' formulation" in its subsequent *Bynog* decision.  *Edwards*, 268 F.R.D. at 184.

to discipline by . . . [c]ommittees that operated in uniform ways." (Pls.' Mem. 14). But this argument fails, for two reasons.

First, Plaintiffs have failed to prove that all drivers did, in fact, sign substantially identical Franchise Agreements. As noted above, although there are six different franchisor defendants in this suit (Compl. ¶ 25), Plaintiffs have provided only two Franchise Agreements. In a footnote in their initial memorandum of law, Plaintiffs claim that they received thirty-five additional Franchise Agreements from Defendants two days before the class certification motion was due, and that these additional Agreements were "similar to other CTG franchise agreements in all respects relevant to class certification." (Pls. Mem. 2 n.9). Plaintiffs did not, however, provide these Agreements to the Court, either in conjunction with their initial memorandum of law or with their reply. Thus, the only evidence in the record concerning the similarity of the Franchise Agreements appears to be (1) deposition testimony from CTG's Rule 30(b)(6) witness who, when asked whether "the franchise agreements for the other companies [are] the same as the franchise agreement for NYC 2 Way," responded, "I don't know that's a fact, but I believe they are similar" (Litrownik Decl. Ex. A ("Litrownik Civello Decl.") 248:16-20); and (2) the two Agreements, which are not, in fact, identical in all respects.[3] As Rule 23 "does not set forth a mere pleading standard," *Comcast Corp.*, 133 S. Ct. at 1432 (internal quotation marks omitted), and the party seeking certification must demonstrate compliance with the Rule's elements "through evidentiary proof," *In re U.S. Foodservice Inc.*, 729 F.3d at 117, the Court cannot

---

[3] For instance, Plaintiffs cite a portion of the NYC 2 Way Franchise Agreement that provides that CTG will assign jobs "in an evenly distributed manner," but enumerates criteria under which NYC 2 Way can deviate from this rule. (Pls. Mem. 3-4; *see* NYC 2 Way Franchisor Agreement ¶ 30). By contrast, the Allstate Franchisor Agreement makes no commitment to an even distribution of jobs, simply stating that "[r]equests for service will be offered and awarded in a manner and in accordance with the customer's requests." (Allstate Franchisor Agreement ¶ 32).

simply accept Plaintiffs' assertion that the Franchise Agreements were "substantially identical" without further proof.

Second, even if all of the Franchise Agreements were substantially identical, Plaintiffs' argument overlooks that "the critical determinant" of employment status under New York law is not the *right* of a purported employer to control a purported employee, but "the degree to which the purported employer *exercises* control *in fact* over the results produced or the means used to obtain them." *Edwards*, 268 F.R.D. at 184 (emphases added); *accord Bynog*, 1 N.Y.3d at 198; *Hernandez v. Chefs Diet Delivery, LLC*, 915 N.Y.S.2d 623, 625 (2d Dep't 2011); *Gagen v. Kipany Prods., Ltd.*, 812 N.Y.S.2d 689, 690 (3d Dep't 2006). To be sure, "forms of agreement and other standardized documents surely are pertinent to the analysis." *Edwards*, 268 F.R.D. at 184. But such documents "are not necessarily dispositive of what, ultimately, would be an individualized determination of the degree of control that [CTG] actually exercised over each of the putative class members." *Id.* In fact, "reliance even on unambiguous documents arguably would be insufficient to establish the requisite control in the face of contradictory evidence." *Id.*

Significantly, there is "contradictory evidence" in the present case — at least, and this is the critical point, as to some of the potential class members. For example, the record makes clear that some drivers owned their own vehicles (*see* Thering Decl. Ex. 15 ("M. Solorzano Dep.") at 37:4-38:12; Pinedo Dep. at 55:6-13); maintained their own vehicles (*see* Choudhary Dep at 42:9-10; Pinedo Dep. at 32:8-11); had private customers, (*see* Ali Dep. at 108:8-14; Choudhary Dep. at 41:14-19; J. Solorzano Dep. at 36:25-37:2); and drove for competitor car companies (*see* Ali Dep. at 36:5-22; Saleem Dep. at 20:14-20; Siddiqui Dep. at 93:21-94:18). Some drivers, however, did not have private customers (*see* Thering Decl. Ex. 1 ("Bautista Dep.") at 77:15-78:2; Siddiqui Dep. at 111:10-13); did not own their vehicles (*see* M. Solorzano Dep. at 39:7-21;

10

Thering Decl. Ex. 7 ("Perez Dep.") at 82:14-17); did not perform their own maintenance (*see* Perez Dep. at 84:23-24); and did not drive for competitor companies (*see* Koura Dep. at 17:21-23).[4] These differences among drivers are likely to be significant — and could even be outcome determinative — given the nature of the inquiry under New York law.  *See Rivera v. Fenix Car Serv. Corp.*, 903 N.Y.S.2d 690, 694-95 (Sup. Ct. 2010) (noting that where car service's drivers owned and maintained their own vehicles, received no salary, and set their own hours, these facts favored an independent contractor classification); *Abouzeid v. Grgas*, 743 N.Y.S.2d 165, 166 (2d Dep't 2002) (finding only incidental control where car service's drivers, *inter alia*, set their own hours, maintained their own vehicles, and could work for other services); *Irrutia v. Terrero*, 642 N.Y.S.2d 328, 329 (2d Dep't 1996) (similar).

In the face of these disparate circumstances within the proposed class, Plaintiffs argue that class treatment is nonetheless appropriate because, even on Defendants' view of the evidence, "CTG allows *all* drivers to make free choices about their work."  (Pls.' Reply 2).  But in doing so, Plaintiffs focus again on the wrong question: whether CTG had the right to control the drivers as opposed to whether it exercised control over them in fact.  *Cf. Rivera*, 903 N.Y.S.2d at 694 ("Although the contractual agreement between [the putative employer] and the drivers who utilize its dispatching services explicitly denominates the drivers as independent contractors, [the putative employer's] retention of control over certain aspects of the drivers' conduct and job performance raises factual questions concerning whether an employer-employee relationship exists . . . .").  Given the focus of the inquiry under New York law and the factual

---

[4] Defendants also assert that some of the drivers "rent out their franchises to other drivers, while some do not."  (Defs.' Mem. 14; *see also id.* 3-4, 19).  The only supporting evidence for this proposition, however, is the deposition of Joseph Civello, who affirmed that franchisees "*may* . . . permit another person . . . to operate the franchise."  (Defs.' Mem. 3 & n.3; Thering Civello Dep. at 267:3-17) (emphasis added)).  Without evidence that some drivers did, in fact, rent out their franchises, while others did not, the Court cannot and will not credit this assertion.

11

differences within the proposed class, answering the question of whether a particular driver "is an independent contractor or employee" is likely to be "fact specific and may be employee specific: where did he or she work and what were the conditions there?  Who was the supervisor and were representations made?  How was he/she compensated?  For how long a period was he/she employed?"  *Shayler*, 2013 WL 772818, at *9 (S.D.N.Y. Feb. 27, 2013).

*Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 411 (S.D.N.Y. 2013), and *Meyer v. United States Tennis Association*, — F.R.D. —, No. 11 Civ. 6268 (ALC), 2013 WL 1777556, at *1 (S.D.N.Y. 2013), upon which Plaintiffs rely heavily (Pls.' Mem. 19-20), do not call for a different result.  Like this case, those cases did involve wage-and-hour claims under the NYLL that turned, at least in part, on the question of whether the plaintiffs were properly classified as independent contractors.  But neither court acknowledged that, under New York law, the answer to that question was based on whether the purported employer exercised control in fact over the alleged employee.  Moreover, in finding that class treatment was appropriate, the courts expressly found that the potential class members — in *Jacob*, assistant store managers at Duane Reade pharmacies, and in *Meyer*, tennis umpires at the U.S. Open — "carr[ied] out their duties . . . pursuant to a uniform policy, uniform training, uniform job description, and uniform procedures."  *Jacob*, 289 F.R.D. at 415; *accord Meyer*, 2013 WL 1777556, at *6; *see also Jacob*, 289 F.R.D. at 420 ("At bottom, the deposition testimony reflects that most [workers] perform similar day-to-day functions.  Moreover, it reveals that they all generally feel responsible for keeping the stores up to 'standards.'"); *Meyer*, 2013 WL 1777556, at *12 (similar).  Here, by contrast, Plaintiffs have failed to demonstrate, by a preponderance of the evidence, a similar level of homogeneity among CTG drivers.

In short, the Court concludes that the common question — whether CTG drivers were

misclassified as independent contractors — will not yield a common answer.  Instead, answering that question as to each driver will require a fact-specific and driver-specific examination of the degree of control that CTG exercised in fact.  Plaintiffs have therefore failed to carry their burden to prove that the commonality requirement is met — a failure is fatal to their motion for class certification.  *See, e.g.*, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met.").

      In any event, for largely the same reasons, Plaintiffs have also failed to show that the typicality and predominance requirements are met.  Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation marks omitted).  The predominance requirement involves an inquiry into whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and is satisfied if "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof," *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 118.  Notably, the Supreme Court has observed that "the commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Likewise, the predominance inquiry is similar to, but more demanding than, the commonality inquiry.  *See, e.g.*, *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

      It follows from the discussion of commonality above that Plaintiffs' proposed class fails

13

to meet these standards.  As noted, whether plaintiffs were properly classified as independent contractors cannot be resolved through generalized proof, but rather requires individualized examination into the extent of control that CTG exercised over each driver.  As a result, it cannot be said that common questions predominate over individual ones or that the named Plaintiffs' claims are typical of those of the class.  *See, e.g.*, *Xuedan Wang v. Hearst Corp.*, — F.R.D. —, No. 12 Civ. 793 (HB), 2013 WL 1903787, at *8-9 (S.D.N.Y. 2013) (finding predominance not satisfied because the "[workers'] duties, . . . training, and supervision" could not be evaluated based on common proof); *Shayler*, 2013 WL 772818, at *9 ("The inquiry as to whether an individual is an independent contractor or employee is fact specific and may be employee specific.").  Similarly, because the litigation would require individualized proof for each of the drivers, a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b); *see, e.g.*, *Xuedan Wang*, 2013 WL 1903787, at *9 ("[T]he individualized nature of proofs in this case signals that case management would be difficult, if not near impossible, and separate actions may be more appropriate."); *Shayler*, 2013 WL 772818, at *9 ("For the same reasons stated [in the context of the predominance analysis], this Court finds no judicial efficiencies to be furthered by class treatment.").  Accordingly, Plaintiffs' motion must be, and is, denied.

## DEFENDANTS' APPLICATION TO FILE DOCUMENTS UNDER SEAL

Defendants filed Exhibits 3, 9, 12, 16, 17, 18, and 19 to the Margaret C. Thering Declaration of September 13, 2013 under seal, without leave of the Court.  Thereafter, the Court required Defendants to submit an application explaining why sealing the exhibits was consistent with the common law and First Amendment presumptions in favor of public access to judicial documents.  (Docket No. 385).  The Defendants filed such an application on October 4, 2013,

requesting that Exhibits 16, 17, 18, and 19 remain under seal; they did not ask that Exhibits 3, 9, and 12 be sealed. (Docket No. 406). The Court at indicated that it would hold its ruling on their application in abeyance pending resolution of this class certification motion. (*Id.*).

The Court now grants Defendants' application to keep Exhibits 16, 17, 18, and 19 under seal. The weight of the presumption in favor of public access to judicial documents is governed by "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted). In this case, the Court did not rely on information from Exhibits 16, 17, 18, or 19 in rendering its decision on the instant motion. Thus, the value of the information to those monitoring the federal courts is low. By contrast, the interest in keeping these documents confidential is strong, as they contain Plaintiffs' names and addresses, CTG dispatch data, CTG check registers, and excerpts from Plaintiffs' tax returns. Accordingly, the Court grants Defendants' request to keep these Exhibits under seal. As Defendants have not made any application to keep Exhibits 3, 9, and 12 under seal, they are directed to file them on ECF immediately, in unredacted form.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is DENIED. Defendants' sealing application is GRANTED as to Exhibits 16, 17, 18, and 19 to the Thering Declaration of September 13, 2013. Per the Court's order of October 17, 2013 (Docket No. 420), any motion for summary judgment by either Plaintiffs or Defendants is due 30 days from the date of this Opinion and Order. If no motion for summary judgment is filed, the Parties shall submit a Joint Pretrial Order prepared in accordance with the Court's Individual Rules and Practices and Fed. R. Civ. P. 26(a)(3) within 30 days of the date of this Opinion and Order.

The Clerk of Court is directed to terminate Docket No. 160.

SO ORDERED.

Dated: November 15, 2013
       New York, New York

                                             JESSE M. FURMAN
                                          United States District Judge

16