Evan J. Spelfogel
espelfogel@ebglaw.com
Margaret C. Thering
mthering@ebglaw.com
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177
(212) 351-4500
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
MAZHAR SALEEM and JAGJIT SINGH, individually
and on behalf of all others similarly situated,

           Plaintiffs,

- against -

CORPORATE TRANSPORTATION GROUP, LTD.,
et al.,

           Defendants.
------------------------------------- x

ECF CASE

12 CV 08450 (JMF)

**AFFIDAVIT OF EDUARD SLININ IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, EDUARD SLININ, duly sworn, deposes and states:

    1.    I am a defendant in this lawsuit.

    2.    The Franchisor companies provide black car services to their clients, which include, but are not limited to, law firms, music companies, banks, and insurance and brokerage firms.

    3.    NYC 2 Way International, Ltd. is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.

4. Allstate Private Car & Limousine, Inc. is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.

5. Aristacar & Limousine, Ltd. is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.

6. TWR is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.

7. Excelsior Car and Limo, Inc. is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.

8. Hybrid Limo Express, Inc. is a franchisor that is duly licensed by the Taxi & Limousine Commission as a black car base. It operates a black car service within the tri-state area.[1]

9. In order to drive for one of the Franchisor companies, a driver may: (i) purchase or rent a franchise from one of the franchisor companies; (ii) purchase or rent a franchise from a third party who owns or rents a franchise; or (iii) be retained by a franchisee to provide driving services.

---

[1] Collectively, NYC 2 Way International, Ltd., Allstate Private Car & Limousine, Inc., Aristacar & Limousein, Ltd., TWR, Excelsior Car and Limo, Inc., and Hybrid Limo Express, Inc. are referred to as "Franchisors."

FIRM:24591546v4

10. Some of the moving plaintiffs purchased a franchise from someone other than a CTG-affiliated franchisor company but did not pay a transfer fee. These plaintiffs include Carlota Briones and Marlene Pindeo.

11. Mark Slinin, Eduard Slinin, and Gerhard Doetsch all have authority on behalf of NYC 2 Way International, Ltd. to approve a franchise transfer. I do not have to approve the transfer, though I am usually informed of it.

12. When customers are given a refund, the refund may sometimes affect drivers' voucher compensation, but not always.

13. Sometimes, if a driver gives an estimated time of arrival ("ETA") that is longer than that requested by the customer, the driver loses the job, and the job goes to another driver.

14. There is a "canned" message programmed into the CTG dispatch system that says: "PLEASE TAKE YOURSELF OFF THE GOING HOME LIST OR YOU WILL HAVE A 10-5 THANK YOU." Being on the "going home" list entitles a driver to be offered a next job with a destination near where the driver lives. This message was added, at the request of Security Committees, because some drivers were putting themselves on the "going home" list even if they were not going home.

15. On one occasion, I recommended that a driver be fined a certain amount. I made this recommendation to a Security Committee at its request. The Security Committee did not have to follow my recommendation.

16. Nothing prevents drivers from choosing to be a "no show" for a job (i.e., not get released) and then pick up street hails, go to the lines, or drive for another black car company.

17. No franchise agreement has ever been terminated for violation of Security Committee rules.

FIRM:24591546v4

18. When Anwar Bhatti complained to CTG management about the bailout penalty while he was chairman of NYC's Security Committee, I told him to speak to the Communications Committee because I have no say over such penalties.

19. I never took Anwar Bhatti off the air and required him to come to the base to speak with me.

20. I never fined Anowar Chowdhury $5,000.

21. I never discussed a customer complaint with Anowar Chowdhury.

22. Defendants have never put notices in drivers' checks regarding rules the drivers must follow. From time to time, however, Security Committees have asked management to insert communications into drivers' checks' envelopes. We have accommodated such requests.

23. CTG and the Franchisors have engaged in advertising efforts to procure new drivers and customers for the Franchisors and to generate more and new business for the drivers.

24. I made a decision to waive payment of deposits and weekly dues in the first week of a driver's affiliation with the Franchisors in order to maintain affiliation rates.

25. Neither CTG nor any of the Franchisors maintain employment or personnel records for drivers.

26. Greg Mastrangelo, Stephen Aliberti, and Joseph Maydwell have conducted inspections of vehicles and/or instructed others to inspect vehicles at the request of Security Committees or drivers themselves.

27. It can take anywhere from less than a minute to more than two hours to reach the top of a queue.

28. Neither I nor anyone in dispatch ever called Jagjit Singh at his home, telling him that cars were needed in the city.

FIRM:24591546v4

29. Drivers are given information about the rates CTG charges so that they may make informed decisions about what jobs to accept and reject. Having this information allows drivers to request to be taken off of accounts.

30. I did not tell Jamshed Choudhary that Security Committee fines should remain in place when he asked about reducing fines. CTG does not set the rate of Security Committee fines.

31. In one incident, Mohammad Siddiqui was taken off the air and required to go to the base for a hearing based on a customer's complaint of the route taken. This action was directed by the Security Committee.

32. Jose Solorzano provided driving services with the use of CTG's dispatch system from approximately 2003 through approximately February 2013.

33. Miriam Solorzano provided driving services with the use of CTG's dispatch from approximately October 2004 through August 2013.

34. CTG's dispatch platform was designed and built "in-house" by CTG's programmers with input from a range of CTG personnel. Drivers and clients of the Franchisors were also consulted. CTG does not have drivers or clients.

35. I decided how to structure the compensation of those who provide driving services for the Franchisor Defendants.

36. Drivers affiliated with the Franchisor Defendants get the majority of their CTG-related work through their dispatch device.

FIRM:24591546v4

37. Raisa Kandov enters information about deductions from drivers' voucher payment checks into CTG's billing system. Such information is given to her by or on behalf of the Security Committees.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

_____
EDUARD SLININ

Sworn to before me this 4th
day of February, 2014

*Marina Kurbanov*
Notary Public

MARINA KURBANOV
NOTARY PUBLIC, STATE OF NEW YORK
No. 01KU6089420
Qualified in Kings County
Commission Expires March 24, 2015

FIRM:24591546v4