# OUTTEN & GOLDEN LLP

*Advocates for Workplace Fairness*

May 6, 2014

**By ECF**
The Honorable Jesse M. Furman
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    <u>Saleem v. Corporate Transportation Group, Ltd.</u>, No. 12 Civ. 8450 (JMF)

Dear Judge Furman,

      We represent the Plaintiffs in the above-referenced matter. We write in response to Defendants' notice of supplemental authority in support of their motion for summary judgment. Both cases cited in Defendants' letter are distinguishable from this one and rely on reasoning that has been rejected by courts in this Circuit and is not persuasive.

**I.     The Cases Are Factually Dissimilar from This Case in Material Respects.**

    **A.     *Arena v. Delux Transportation Services, Inc.***

      In *Arena v. Delux Transportation Services, Inc.*, No. 12 Civ. 1718, 2014 WL 794300 (E.D.N.Y. Feb. 26, 2014), the plaintiff operated a taxicab that he leased from the defendants. *Id.* at *1. The case is factually distinguishable from this case in several important respects.

      First, the court found that the defendants exercised little or no control over the plaintiff on a regular or ongoing basis. Specifically, although the defendants issued "guidelines" governing aspects of the plaintiff's conduct, there was no evidence that the plaintiff or any other driver had been penalized for failing to adhere to the guidelines or that there were even any penalties for noncompliance. *Id.* at *9. In contrast, here, CTG requires Plaintiffs to adhere to detailed rules, or "Rulebooks," which contain specified penalties for noncompliance.[1] Moreover, Plaintiffs have submitted evidence that drivers were penalized for noncompliance, including by being fined and removed from accounts.[2] In this respect, this case is similar to *Rick's Cabaret International, Inc.*, 967 F. Supp. 2d 901 (S.D.N.Y. 2013), in which the court found that the requisite degree of control existed based in part on the fact that the defendants had propounded guidelines with penalties that served as a "threat" to noncompliance. *Id.* at 913-17 (defendant's

---

[1]    ECF No. 484 (Pls.' SOF) ¶¶ 36-38; ECF No. 502 (Pls.' ASF) ¶¶ 13-14.
[2]    ECF No. 484 (Pls.' SOF) ¶¶ 85, 106-112; ECF No. 502 (Pls.' ASF) ¶ 20.



3 Park Avenue, 29th Floor, New York, NY 10016  Tel 212-245-1000  Fax 646-509-2060
203 North LaSalle Street, Suite 2100, Chicago, IL 60601  Tel 312-924-4888  Fax 646-509-2075
One Embarcadero Center, 38th Floor, San Francisco, CA 94111  Tel 415-638-8800  Fax 415-638-8810
og@outtengolden.com   www.outtengolden.com

"written threat to impose . . . fines, and its imposition of such fines on non-compliant dancers, even if largely retracted, is strong evidence of its control over them").

Second, the defendants' business model, which is different than CTG's business model, helps to explain why the defendants' control over the plaintiff was so minimal. Specifically, unlike in this case, the defendants earned money solely by leasing taxis to drivers and did not recover any portion of the fare. *Arena*, 2014 WL 794300, at *9. Thus, they had little need or incentive to control drivers' conduct or discipline them for refusing to take calls.[3] *See id.* Here, CTG earns its living by retaining a portion of every fare. Thus, its livelihood depends on the quality of the service that drivers provide and the volume of work they perform. As a result, the evidence shows that CTG ensures that rules governing drivers' conduct are enforced.[4] It also shows that CTG has created a dispatch system that does not leave drivers free to pick and choose the calls they take, like the plaintiff could in *Arena*, but instead discourages them from declining any call by forcing them off the dispatch list for hours if they reject a passenger.[5]

Third, the plaintiff in *Arena* had opportunities for profit and loss that CTG drivers do not have. The plaintiff retained all of the fares he collected without having to account to the defendants in any way. *Id.* at *10. In this case, Plaintiffs pay a percentage of each fare to CTG, which processes the fare and then remits Plaintiffs' portion to them on their paychecks.[6] Moreover, critically, in *Arena*, the defendants provided the plaintiff with information about each dispatch, including both the pickup and drop-off location, before he decided whether to accept or decline it. *Id.* at *3. CTG's drivers cannot make comparable business decisions because CTG does not provide them with the destination before they accept a job.[7]

Fourth, the relationship between the plaintiff and the defendants in *Arena* was "temporary in nature and could be created and terminated easily." *Id.* at *12. In contrast, here, drivers typically work for CTG for many years pursuant to agreements that last at least a year.[8]

### B. *Moba v. Total Transportation Services Inc.*

*Moba v. Total Transportation Services Inc.*, No. 13 Civ. 138, 2014 WL 1671587 (W.D. Wash. Apr. 25, 2014), a case involving truck drivers who hauled freight, is also factually distinguishable from this case.

---

[3] In addition, because the defendants in *Arena* made their money from leasing cars, not servicing passengers, their drivers were far less "integral" to their business than the drivers in this case are to CTG's business.
[4] ECF No. 484 (Pls.' SOF) ¶¶ 64-112; ECF No. 502 (Pls.' ASF) ¶¶ 7-20.
[5] ECF No. 484 (Pls.' SOF) ¶ 127; ECF No. 502 (Pls.' Counter-Statement) ¶ 145; ECF No. 502 (Pls.' ASF) ¶¶ 25, 27.
[6] ECF No. 484 (Pls.' SOF) ¶ 33.
[7] ECF No. 502 (Pls.' ASF) ¶ 26.
[8] ECF No. 502 (Pls.' ASF) ¶¶ 50-52.

First, there was no evidence that the defendants exercised any control over the plaintiffs. The plaintiffs apparently did not submit any evidence rebutting language in their independent contractor agreement stating that they had "complete control" over their "working conditions," and that the defendants did "not control the manner, or determine the method, of accomplishing [the plaintiffs'] services." *Id.* at *5. In contrast, as discussed above, it is undisputed that Plaintiffs' franchise agreements incorporated rules governing their conduct and the evidence shows that CTG enforced the rules through its own employees, consultants, and the Security Committees.[9]

Second, like the plaintiffs in *Arena*, the drivers in *Moba* could increase their income based on the type of job, for example, by accepting a long-haul job. *Id.* However, as discussed above, CTG did not provide Plaintiffs with information about jobs before they accepted them and it punished them if they rejected jobs that were not good business prospects.[10]

Third, the type of work that the plaintiffs performed in *Moba* – driving a truck and hauling freight – was specialized and unlike the unspecialized work that Plaintiffs perform – driving a regular car. *See id.* at *6. Furthermore, unlike the Plaintiffs, the drivers in *Moba* had to know how to handle heavy freight and be familiar with Department of Transportation regulations for freight haulers. *Id.*

Fourth, unlike the drivers in *Moba* who could hire other drivers to work for them and increase their profits by taking on more jobs, *id.* at *1, 5, there is no evidence in this case that CTG drivers hired other drivers to work for them. Although a handful of CTG drivers rented their franchises to other drivers, these drivers did not profit from managing the work that the drivers who rented from them performed; they simply obtained a fixed amount in rent from the drivers for use of the franchise.[11]

## II. The Cases Are Not Persuasive Because They Misapply the Law.

The Court should also not rely on the cases because they fail to correctly apply the law.

First, common sense supports the authority in this Circuit that driving a car and having a license are not specialized skills, as the *Arena* and *Moba* courts held, but "routine life skill[s]." *Campos v. Zopounidis*, No. 09 Civ. 1138, 2011 WL 2971298, at *7 (D. Conn. July 20, 2011); *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 326 (S.D.N.Y. 2001). Being able to navigate is also not a specialized skill. *See Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 191 (S.D.N.Y. 2003) (delivery workers who must navigate New York City do not require specialized skill).

---

[9] ECF No. 484 (Pls.' SOF) ¶¶ 64-112; ECF No. 502 (Pls.' ASF) ¶¶ 7-20.
[10] ECF No. 484 (Pls.' SOF) ¶ 127; ECF No. 502 (Pls.' Counter-Statement) ¶ 145; ECF No. 502 (Pls.' ASF) ¶¶ 25-27.
[11] ECF No. 502 (Pls.' ASF) ¶ 36.

Second, the courts in *Arena* and *Moba* applied the wrong standard to determine whether the plaintiffs were "integral" to the defendants' businesses. Specifically, they held that the plaintiffs were not integral because they could be easily replaced by other workers. *Arena*, 2014 WL 794300, at *11; *Moba*, 2014 WL 1671587, at *6-7. However, the proper test considers whether the worker's *services* are integral to the business, not whether the worker himself is integral. *See Superior Care*, 840 F.2d at 1061 (nurses' "*services* are the most integral part of Superior Care's operation") (emphasis added); *see also Lewis v. ASAP Land Express, Inc.*, 554 F. Supp. 2d 1217, 1225 (D. Kan. 2008) (rejecting argument that driver was not integral because he could be replaced; proper inquiry considered "the *type of work* which plaintiff performed") (emphasis in original).

The test that the *Arena* and *Moba* courts applied is also inconsistent with the FLSA because it would mean that fungible, low-skilled workers – whom the FLSA is intended to protect – are less likely to be employees than highly skilled workers. However, low-skilled workers, like CTG drivers, are much more likely to be economically dependent on "someone else's business for the opportunity to render service," than highly skilled workers. *See Ansoumana*, 255 F. Supp. 2d at 190.

We thank the Court for its consideration of these matters.

Respectfully submitted,

Rachel Bien

cc: Evan J. Spelfogel, Esq. (via ECF)
Margaret Casey Thering, Esq. (via ECF)
Michael Craig Schmidt, Esq. (via ECF)
Roberta Cohen Pike, Esq. (via ECF)
Stephen H. Kahn, Esq. (via ECF)
Michael J. Scimone, Esq. (via ECF)
Michael N. Litrownik, Esq. (via ECF)